UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| VALERIE D. BEAGLE, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil No.: 2:18-cv-00163-GFVT |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| ANDREW SAUL, | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The plaintiff, Valerie D. Beagle, seeks judicial review pursuant to 42 U.S.C. §§ 405(g), of an administrative decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons stated herein, the Court will deny Ms. Beagle's Motion for Summary Judgment [R. 9], and grant that of the Commissioner [R. 13].

**I**

Ms. Beagle filed her application for DIB and SSI in March 2014. [Tr. 333, 336.] She alleges a disability onset date of July 31, 2013. *Id.* Two administrative hearings were held. [Tr. 91–156; 157–81.] Subsequently, the ALJ issued his decision on September 27, 2017, finding that Ms. Beagle was not disabled under the Act. [Tr. 67–87.] The Appeals Council declined Ms. Beagle's request for review, and this appeal followed.

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520. First, if a claimant is performing a substantial gainful activity, he is not disabled.

20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). If, at step five, a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

The ALJ's written decision proceeds sequentially through the five steps. [Tr. 64–87.] At Step 1, the ALJ found that Ms. Beagle met the insured status requirements of the Social Security

Act through December 31, 2018, and that she has not engaged in substantial gainful activity since July 31, 2013, the alleged onset date. [Tr. 69.] Although she worked after the alleged onset date, this was an unsuccessful work attempt. *Id.* At Step 2, the ALJ found that Ms. Beagle suffered from the following severe impairments: "anxiety disorder, major depressive disorder, unspecified neurocognitive disorder, and seizure disorder." [Tr. 70.] The ALJ also found Ms. Beagle suffered from a number of non-severe impairments, such as back disorder, status post hysterectomy and oophorectomy, status post cholecystectomy, pancreatitis, and chronic diarrhea. *Id.*

At Step 3, the ALJ determined that Ms. Beagle did not have an impairment or combination of impairments that meets or medical equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In making this finding, the ALJ considered the "paragraph B" criteria in relation to Ms. Beagle's mental impairments. In understanding, remembering, or applying information, the ALJ found Ms. Beagle had only a mild limitation. *Id.* He noted she was able to solve math problems presented orally and write from dictation without error. As to the second functional area—interacting with others— the ALJ found Ms. Beagle had moderate limitations. In making this finding, the ALJ noted that Ms. Beagle testified she could not be around more than ten people at a time without severe anxiety, and that her anxiety kept her from attending church. With respect to Ms. Beagle's ability to concentrate, persist, or maintain pace, the ALJ found a moderate limitation. Although she alleged she could not finish tasks and had difficulty understanding instructions, Ms. Beagle had no difficultly following the flow of conversation and did not experience word finding difficulties at the consultative psychological examination. *Id.* Finally, the ALJ found Ms. Beagle had only a mild limitation in her ability to adapt or manage herself. He noted that she was able to perform

personal care tasks, drive herself places, and was independent in her daily activities. *Id.* Ultimately, the ALJ concluded that Ms. Beagle's mental impairments did not equal any of the mental listing categories.

At Step 4, the ALJ found that Ms. Beagle had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but that she should not climb ladders, ropes or scaffolds, be near dangerous machinery or unprotected heights, consistent with her seizure disorder. Additionally, any task must be low stress, which is defined as having no high production quotas, no piece rate work, and no work involving arbitration, confrontation, negotiation, supervision or commercial driving. *Id.* Finally, Ms. Beagle should have only occasional, superficial interaction with the public. *Id.*

In making this assessment, the ALJ found that Ms. Beagle's underlying physical and mental impairments could be reasonably expected to produce her symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. [Tr. 73.] Specifically, the ALJ found that Ms. Beagle's claims about the frequency and seriousness of her seizures was not consistent with the objective medical evidence in the record. Although she reported experiencing "staring spells," she is still allowed to maintain a driver's license and there have been no abnormal neurological findings in any MRI or EEG. [Tr. 74.] Also, while Ms. Beagle testified she could only lift five pounds comfortably, there is no evidence in the record to support this assertion. Finally, the ALJ gave only little weight to the opinion of Ms. Beagle's treating psychologist, Dr. Robert Noelker. [Tr. 77.] Dr. Noelker's opinion stated that Ms. Beagle was "permanently and totally disabled," and had "marked limitation in understanding and remembering detailed instructions." *Id.* The ALJ found his opinion was inconsistent with other

4

examiners whose findings indicated Ms. Beagle did not have issues interacting with others, neither in her examination nor by her own reports.

At Step 5, the ALJ found that Ms. Beagle is unable to perform her past relevant work. [Tr. 77.] Ms. Beagle was previously employed as a cashier, curtesy booth worker, and a parts picker. The ALJ credited the testimony of the vocational expert that somebody with Ms. Beagle's characteristics could find work int the national market as a linen room attendant, mail clerk, or merchandise marker. [Tr. 78.] Ultimately, considering the record before him, the ALJ found Ms. Beagle has not been under a disability, as defined in the Social Security Act, from March 20, 2014, the date of the application.

## II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not

conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Ms. Beagle raises several issues on appeal to this Court. She argues that the ALJ failed to evaluate her impairments in combination, erred by not giving controlling weight to Dr. Noelker's opinion, erred in evaluating the subjective complaints and testimony, and erred by proposing improper hypothetical questions to the vocational expert. [R. 9 at 5.]

**A**

Essentially, Ms. Beagle first suggests that the ALJ's decision is not supported by substantial evidence, because he did not consider all of her impairments in combination. *Id.* In support of her argument, Ms. Beagle highlights her frequent bowel movements, history of pancreatitis, and migraine headaches. [R. 9 at 7.] Ms. Beagle argues the ALJ failed to consider the extra breaks Ms. Beagle would need while having "8–10 bowel movements a day[.]" She further argues the ALJ did not consider her migraine headaches, which would cause her up to 5 days of work in a month. Thus, ultimately Ms. Beagle argues it was error for the ALJ to find these impairments were non-severe at Step 2. [R. 9 at 7.]

As already noted, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass*,

6

499 F.3d at 509; *Her*, 203 F.3d at 389-90. And although Ms. Beagle disagrees with the ALJ's weighing of the evidence, it is the ALJ's responsibility, not Ms. Beagles, to weigh medical evidence. *See Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988) ("Although the record is replete with inconsistent medical reports and [the Claimant's] own conflicting testimony, we acknowledge the discretion vested in the ALJ to weigh all the evidence.") (citing *Myers v. Richardson,* 471 F.2d 1265 (6th Cir.1972); *Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir.1987)); *see also Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")

A review of the record shows that the ALJ did consider the impairments that Ms. Beagle refers to in her motion. The ALJ noted that Ms. Beagle "has had treatment for a few acute gastrointestinal conditions," including pancreatitis and diarrhea. While acknowledging Ms. Beagle was treated for pancreatitis in both May 2015 and August 2015, the ALJ also recognized that subsequent colonoscopy and endoscopy exams were normal. [Tr. 70.] Further, Despite reporting 8 to 10 bowel movements a day and decreased appetite, Ms. Beagle's medical records indicate her weight had stayed the same, and "physical examinations are generally unremarkable except for abdominal tenderness." *Id.* Additionally, as the written decision points out, Ms. Beagle's daily bowel movements decreased to just 6 per day with medication. *Id.*

Although the ALJ did not explain his characterization of the migraines in Step 2, he did consider their effect in formulating Ms. Beagle's RFC. The ALJ credited Ms. Beagle's testimony that she experienced headaches, but noted that "she reported she was usually able to relieve her symptoms with over-the-counter migraine headache medications." Further, the ALJ

7

relied on her medical exams, which indicated "[s]he had no neurological deficits, but complained of photophobia and phonophobia."

Ms. Beagle objects to the ALJ's characterization of the foregoing impairments as "non-severe," but fails to show that there is a lack of substantial evidence supporting his characterizations. The Court does not find that the ALJ erred in terming Ms. Beagle's impairments of pancreatitis, migraines, and diarrhea "non-severe," but even if it was error, the error was harmless. At step two, the ALJ makes a determination whether a claimant has a condition or combination of conditions that qualifies as "severe." 20 C.F.R. §§ 416.920(a)(4)(ii), 416.921(a). If a claimant suffers from one or more severe impairments, the ALJ proceeds to step three. If not, the analysis ends and the claimant is found not disabled.

Although the ALJ Stanley did not find the foregoing impairments were severe, he identified several other conditions amounting to severe impairments and proceeded with step three of the analysis. The ALJ also considered Ms. Beagle's pancreatitis, gastrointestinal, and migraine problems when assessing her RFC. *Fisk v. Astrue*, 253 Fed. App'x 580, 584 (6th Cir. 2007) (quoting *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987) ("Because the ALJ considered these impairments when determining Fisks' residual functional capacity, '[w]e find it unnecessary to decide' whether the ALJ erred in classifying the impairments as non-severe at step two.")). Therefore, the ALJ did not err in classification of these impairments.

**B**

Ms. Beagle next suggests that Dr. Robert Noelker's medical opinion was not properly considered. [R. 9 at 7.] As Ms. Beagle's treating psychologist, Dr. Noelker's opinion on the issues of the nature and severity of Ms. Beagle's psychological impairments is given controlling

weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).[1] If the treating source's opinion is not given controlling weight then the ALJ is required to consider the following factors in deciding exactly how much weight is to be given to the opinion: length of the treatment relationship as well as the frequency of examinations, the nature and extent of the treatment relationship, the supportability of the medical opinion, the consistency of the opinion and the degree of specialization of the treating source. 20 C.F.R. § 404.1527(c)(2)(i-ii), (c)(3-6); *Turner v. Comm'r of Soc. Sec.*, 267 F. App'x 456, 460 (6th Cir. 2008); *Wilson,* 378 F.3d at 544. The ALJ is required to give "good reasons" for not giving weight to opinions from the treating physician in a disability determination. 20 C.F.R. § 404.1527(c)(2). The purpose of this requirement is to "let claimants understand the disposition of their cases," to "ensure[] that the ALJ applies the treating physician rule," and to "permit[] meaningful review of the ALJ's application of the rule." *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5; *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)); *see also Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013).

As pointed out in the ALJ's written decision, a physician's opinion about a claimant's capacity or restrictions are relevant evidence, but those opinions are not authoritative because the ultimate responsibility for assessing a claimant's RFC is that of the ALJ. 20 C.F.R. §§ 404.1512(b)(2), 404.1527(d)(2), 404.1545(a)(3), 404.1546(c); SSR 96-5p, 1996 WL 374183

---

[1] This cited provision is now located at 20 C.F.R. § 404.1527(c)(2).

(S.S.A.); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010; *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician.") Thus, the ALJ is never bound by a physician's statement that their patient is "permanently and totally disabled."

The ALJ also adequately explained his decision to give Dr. Noelker's opinion little weight. His opinion was inconsistent with that of every other psychologist who examined Ms. Beagle. [Tr. 77.] His assessment further contradicts Ms. Beagle's own testimony in that she reports she is able to take her son to sports and social activities. *Id.* Finally, the ALJ provided a sound explanation for discounting Dr. Noelker's RFC assessment. Importantly, the ultimate determination regarding RFC is reserved for the ALJ. 20 C.F.R. §404.1545(e); *Saylor v. Astrue*, 2009 WL 310911, at *2 (E.D. Ky. Feb. 9, 2009); *White v. Comm'r of Soc. Sec. Admin.*, 2013 WL 4817673, at *751 (N.D. Ohio Sept. 10, 2013); 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as … your residual functional capacity …the final responsibility for deciding these issues is reserved to the Commissioner.") Accordingly, the ALJ's opinion will not be disturbed.

## C

Ms. Beagle next contends that the ALJ erred in evaluating her subjective complaints. Thus, it appears Ms. Beagle is objecting to the ALJ's credibility determinations.

In determining whether a claimant is disabled, the Commissioner considers statements or reports from the claimant. 20 C.F.R. § 404.1529. To determine whether statements of a claimant are credible, ALJ's employ the following two-part test:

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must

> evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)) (internal citations omitted). In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529; *see also, Felisky v. Bowen*, 35 F.3d 1027, 1037 (6th Cir. 1994). Importantly, it is within the province of the ALJ, rather than the reviewing court, to evaluate the credibility of claimant. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir.1990); *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir.1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Id*. at 249.

Here, the ALJ adequately explained his credibility determinations. The Court will not republish the written decision here; however, it notes that the ALJ's treatment of Ms. Beagle's credibility was thorough. The ALJ discussed Ms. Beagle's history of seizures, but cited the medical evidence indicating that they were managed with medication. [Tr. 73.] His conclusion that Ms. Beagle's claims of intensity and frequency of her seizures were not supported by the medical evidence is bolstered by the fact that Ms. Beagle is allowed to maintain a driver's

license. The ALJ compared the reports of psychologists treating Ms. Beagle for anxiety and fairly found that Ms. Beagle allegations as to the severity of her mental symptoms are not fully consistent with other evidence. Namely, Ms. Beagle "reported having friends, being socially engaged, and taking her son to sports and social activities." [Tr. 76.] Likewise, the consultative psychologist found that she was "able to demonstrate adequate memory and concentration," and appeared relaxed and made good eye contact. *Id.* Nevertheless, he credited Ms. Beagle's testimony that she felt anxious around groups of more than 10 people, and limited her RFC accordingly. Of course, it is not for this Court to make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). However, the Court finds that the ALJ's credibility determination is supported by substantial evidence.

**D**

Finally, Ms. Beagle argues that the questions posed by the ALJ to the vocational expert at the hearing were error. Specifically, she states that "[h]e first erred vocationally in asking for jobs which take 1-4 months to learn, as these would be semi-skilled and skilled job[.]" [R. 9 at 12.] She goes on to say that "[i]f one accepts that Ms. Beagle can only do unskilled work, then the ALJ erred vocationally with improper hypothetical questions," because "the ALJ left out the number of days of work Ms. Beagle would miss and the extra breaks she would require due to her supported nervous impairments, diarrhea and migraines." *Id.* at 12–13.

The Court has trouble tracking Ms. Beagle's arguments. Whether or not the ALJ's question related to semi-skilled or unskilled work, the ALJ ultimately found that Ms. Beagle was limited to unskilled work. To the extent Ms. Beagle is arguing that the ALJ failed to consider the impact of her gastrointestinal impairments on the number of breaks she would require in a day,

12

the Court notes there is a fundamental disagreement there. As previously explained, Ms. Beagle contends she would require 8 to 10 breaks a day due to diarrhea, but there is medical evidence in the record supporting the ALJ's previous finding that Ms. Beagle's condition improved with treatment. Thus, Ms. Beagle does not explain—and the Court does not guess—how this question prejudiced her outcome. Accordingly, the Court will not disturb the ALJ's decision on this basis.

E

As a final matter, the Court turns to Ms. Beagles' Motion to Remand. [R. 11.] After filing her motion for summary judgment, Ms. Beagle filed a motion to remand her case under sentence 6 of 42 U.S.C. § 405(g) to consider additional medical records.

Pursuant to § 405(g), a district court may remand a case for further administrative proceedings in light of new evidence presented where the evidence is new, material, and there was good cause for not presenting the evidence in the prior proceeding. To be considered new, "the evidence must not have been in existence or available to the claimant at the time of the administrative proceeding." *Glasco v. Comm'r Soc. Sec.*, 645 Fed. App'x 432, 435 (6th Cir. 2016) (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). New evidence is material if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* at 437 (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

Here, Ms. Beagle seeks remand to introduce orthopedic records "showing neck and left shoulder impairments." [R. 11 at 2.] She also seeks to introduce results of a memory test showing "more than two standard deviations below the norm." *Id.* Ms. Beagle states there is good cause for not introducing this evidence earlier, because the records did not exist prior to the ALJ's decision. *Id.* The tests Ms. Beagle seeks to introduce were done in October 2017. *Id.*

13

The Court has reviewed Ms. Beagle's motion and the records, and finds that her motion to remand should be DENIED. Although the evidence is "new" in that it was not obtained until after the ALJ's decision as issued, the Court does not find that it is material. Ms. Beagle asserts that the records "relate back to the period before September 27, 2017," but provides no evidence to that effect other than her own claims that neck pain and memory problems, existed for "some months" prior to testing. In fact, the records do not contain any opinion regarding Ms. Beagle's condition at any point in time prior to the ALJ's decision. The records from Dr. Chris Tapper, who conducted Ms. Beagle's memory test, explains that "*recently* it has become obvious that [Ms. Beagle's] cognitive issues have worsened[.]" [Tr. 25.] Similarly, the orthopedic reports Ms. Beagle wishes the ALJ to consider make no reference to the time period before the ALJ's decision was issued, other than noting that Ms. Beagle "has been noting some increased pain over the past year." Thus, the Court finds there is not a "reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Glasco*, 645 Fed. App'x at 437.

Further, Ms. Beagle has not demonstrated good cause for failing to include the records. Good cause is not established solely because the records did not exist prior to the ALJ's decision. *See Oliver v. Sec'y Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986.) To show good cause, Ms. Beagle must articulate a valid reason for her failure to obtain evidence prior to the hearing, which her motion does not. Accordingly, Ms. Beagle's Motion to Remand [R. 11] is DENIED.

## III

Thus, after reviewing the record, the Court finds that the ALJ's decision finding

Ms. Beagle not disabled is supported by substantial evidence. Moreover, even if the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports her conclusion. *See Her*, 203 F.3d at 389-90; *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

**ACCORDINGLY**, and the Court being sufficiently advised, it is hereby ordered as follows:

1. Plaintiff Valerie Dawn Beagle's Motion for Summary Judgment **[R. 9]** is **DENIED**;

2. The Commissioner's Motion for Summary Judgment **[R. 13]** is **GRANTED**;

3. Ms. Beagle's Motion for Leave to File Reply **[R. 15]** is **GRANTED**;

4. Ms. Beagle's Motion for Remand **[R. 11]** is **DENIED**; and

5. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This 24th day of March, 2020

Gregory F. Van Tatenhove
United States District Judge